Youssef Hammoud, CA #321934
E: yh@lawhammoud.com
HAMMOUD LAW, P.C.
3744 E. Chapman Ave., #F12269
Orange, CA 92859
T: (949) 301-9692
F: (949) 301-9693

*Attorney for Plaintiff,*
*Rory Moore*

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RORY MOORE,<br>            Plaintiff,<br><br>v.<br><br>SAFETY HOLDINGS, INC dba SAMBASAFETY,<br>            Defendant. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**15 U.S.C. § 1681e(b);**<br>**15 U.S.C. § 1681i;**<br>**Cal. Civ. Code § 3345** |

Plaintiff, Rory Moore ("Plaintiff"), by and through the undersigned counsel, hereby submits his Complaint and Demand for Jury Trial ("Complaint") against Defendant Safety Holdings, Inc. dba SambaSafety ("SambaSafety" or "Defendant") alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. and of Cal. Civ. Code § 3345.

## JURISDICTION AND VENUE

1. Jurisdiction of this court arises under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal law: 15 U.S.C. § 1681.

2. Supplemental jurisdiction of this court arises under 28 U.S.C. § 1367 as the state law claim is so related to the claims in the action within such original jurisdiction that it forms part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

4. Defendant transacts business in this District; Defendant purposefully avails itself of the protections of this District; and Defendant regularly directs business at this District, such that personal jurisdiction is established.

## **PARTIES**

5. Plaintiff, Rory Moore, is a natural person who resides in Montclair, California, within the confines of San Bernardino County, California. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c). Plaintiff is a senior citizen, as defined by Cal. Civ. Code § 1761(f).

6. Defendant, SambaSafety, is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f). SambaSafety is incorporated in Delaware, and its principal place of business is located at 8801 Horizon Blvd NE, Albuquerque, New Mexico 87113.

7. At all times relevant to this Complaint, Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

8. Plaintiff incorporates the above paragraphs of this Complaint as though they are fully detailed herein.

9. Plaintiff is one of millions of Americans who participates in the economy through gig work.

10. For approximately the past three (3) years, Plaintiff had enjoyed employment in a part-time capacity as a driver for non-party Uber Technologies, Inc. ("Uber").

11. In or around March 2021, Plaintiff retired from full-time employment. Following his retirement, his primary source of income was Social Security.

12. Thereafter, Plaintiff began driving more frequently for Uber, and has supplemented his Social Security income with earnings of around $500 per week.

13. With his income fixed by Social Security, Plaintiff typically drove for Uber each month until his earnings made him sufficiently comfortable he would have enough money for housing, utilities, and other necessities.

14. Plaintiff settled into a routine post-retirement wherein his Uber earnings represented a necessary component of his budget each month.

15. As part of his employment, Plaintiff consented to ongoing background checks, and was aware Uber would periodically confirm his driver's license remained active and valid.

16. Thus, Plaintiff was understandably alarmed when he received an email from Uber on March 6, 2022, notifying him of an impediment to his continued employment as a result of findings in his most recent background check.

17. After receiving the email, Plaintiff checked his Uber account and confirmed he had been "deactivated," meaning he could no longer accept trips through the Uber platform.

18. Plaintiff was distraught. As detailed herein, the income Plaintiff earned through his employment with Uber was critical to his finances.

19. The email from Uber also provided Plaintiff with a copy of the background check, prepared by SambaSafety.

20. Plaintiff reviewed the background check and quickly identified inaccuracies in the report.

21. Specifically, SambaSafety reported the status of Plaintiff's driver's license as "DISQUALIFIED."

22. Under a field labeled "STATUS DESCRIPTION," SambaSafety reported: "DISQUALIFIED."

23. Plaintiff, who holds a valid, active driver's license, was confused and outraged by this reporting, and continued to review the background check.

24. Under a field labeled "RESTRICTIONS," SambaSafety reported: "REST 68 – DISQUALIFIED FROM DRIVING COMMERCIALLY."

25. At this point, Plaintiff began to piece together what had occurred.

26. More than five (5) years ago, Plaintiff was employed in a position which required a commercial driver's license ("CDL"). Following the conclusion of that employment, Plaintiff ceased maintaining his CDL as it was no longer necessary.

27. Thereafter, Plaintiff's "Driver History Report" maintained by the California Department of Motor Vehicles ("DMV") included a note under a field labeled "RESTRICTIONS" which read: "DISQUALIFIED FROM DRIVING COMMERCIALLY."

28. However, Plaintiff's Class C driver's license – the class most private citizens in California hold for non-commercial driving – always maintained its status as "VALID."

29. Plaintiff realized SambaSafety was inaccurately reporting information about his **CDL** as though it were applicable to his Class C driver's license.

30. Plaintiff's confusion was exacerbated by the knowledge that despite his CDL having lapsed prior to his employment with Uber, this issue – namely, the inaccurate reporting of his driver's license status – had never come up in the past.

31. Upon information and belief, Plaintiff has been the subject of several background checks in conjunction with his Uber employment.

32. Upon information and belief, none of these previous background checks concerning Plaintiff have inaccurately reported his driver's license status.

33. Indeed, upon information and belief, Plaintiff's Uber account has never before been deactivated.

34. The email from Uber included, in relevant part: "If you belief that any of the information in the consumer report is inaccurate…contact [SambaSafety]," and provided Plaintiff with instructions on how to do so.

35. The following day, on March 7, 2022, Plaintiff contacted SambaSafety and disputed its inaccurate reporting.

36. On March 7, 2022, SambaSafety issued an automated response to Plaintiff via email confirming receipt of his dispute.

37. Plaintiff was deeply frustrated with the lack of urgency he felt on the part of SambaSafety. The March 6 email from Uber made clear it would be making a decision "within the next few days" as to whether or not Uber would terminate Plaintiff's employment. Moreover, each day Plaintiff's account remained deactivated represented a compounding threat to his livelihood.

38. Determined to do everything in his power rectify these circumstances, on March 9, 2022, Plaintiff obtained a copy of his "Driver History Report" directly from the DMV, which accurately reflect his driver's license status as "VALID."

39. On March 10, 2022, Plaintiff had received no substantive response from SambaSafety with regard to his dispute and submitted a second dispute.

40. In this second dispute, Plaintiff provided SambaSafety with a copy of the Driver History Report he obtained from the DMV and his driver's license.

41. Plaintiff's understandable frustration was palpable in the comments he provided with his second dispute:

> "You reported that my current Class-C License which is to operate a Non-commercial vehicle is disqualified and that's incorrect! I had a commercial license five years ago that I didn't renew because the job I needed it for ended. I have a complete copy of my driving history/license which clearly indicates that my license is Valid* I will be uploading a copy of both my current Valid* Class-C drivers license and complete driving record from the DMV, I would appreciate if you could expedite the process thanks."

42. In short, Plaintiff provided SambaSafety with everything it needed to conduct a reasonable reinvestigation and determine its original reporting was inaccurate quickly and decisively.

43. Still, SambaSafety took no action beyond a token confirmation email on March 10, 2022, confirming it had received Plaintiff's dispute.

44. The days that followed were torturous for Plaintiff. He anxiously checked his email and Uber account frequently, hoping to learn the inaccurate reporting from SambaSafety had been corrected and that he could resume earning his much-needed ancillary income.

45. Plaintiff's mind frequently raced and turned to panicked thoughts of his finances. Each day he was deactivated from Uber's platform represented further depletion of his savings, and increased his worries about being able to afford his bills.

46. Moreover, Plaintiff suffered from issues falling and/or staying asleep. Plaintiff found himself lying in bed awake for hours, wondering when – or if – this

problem would be resolved, whether he would be reactivated with enough time to earn money to pay his bills, and myriad other anxious thoughts.

47. Among the thoughts racing through Plaintiff's head as he tried sleeping each night was questioning how Uber could rely on information from SambaSafety when it was so obviously inaccurate.

48. A week later, on March 16, 2022, Plaintiff still had heard nothing from SambaSafety.

49. On March 16, 2022, Plaintiff reached out to Uber directly to provide it with a copy of his DMV Driver History Report in hopes Uber would recognize the inaccuracies reported by SambaSafety.

50. The following day, on March 17, 2022, Plaintiff received a response from Uber Support, stating Plaintiff continued to be ineligible to accept trips due to "…a license status issue that disqualifies you" and suggested he resolve things with SambaSafety.

51. Plaintiff was extremely upset with the situation he had found himself trapped in, and SambaSafety remained maddeningly silent.

52. Plaintiff held out hope that when SambaSafety finally got around to investigating his disputes, the obvious inaccuracies it had reported concerning Plaintiff would be clear, and SambaSafety would promptly correct the report.

53. On March 21, 2022, Plaintiff was excited to find he had an email from Uber. He hoped this ordeal was finally behind him and that he could try to salvage some supplementary income during the month of March.

54. Instead, Plaintiff's heart sank as he learned Uber was formally informing him of its decision to terminate his employment. The words "The Company's decision was based in whole or in part on information contained in [the SambaSafety report]" hurt particularly badly, as Plaintiff had done everything in his power to correct SambaSafety's inaccurate reporting on his own.

55. As of the date of this Complaint – more than thirty (30) days after Plaintiff's initial dispute – Plaintiff has received no substantive response from SambaSafety as required by law.

56. Upon information and belief, SambaSafety failed to reasonably reinvestigate Plaintiff's disputes. Instead, SambaSafety ignored Plaintiff's disputes entirely, without evaluating the information Plaintiff provided.

57. Had it done so, SambaSafety would have quickly identified its obviously inaccurate reporting and Plaintiff would have already resumed his employment with Uber.

58. SambaSafety's unwillingness to meet its statutory obligations under the FCRA was particularly confusing as Plaintiff had provided SambaSafety with all of the information it needed to conduct such a reinvestigation.

59. Plaintiff is a senior citizen who has suffered severe emotional distress as a result of SambaSafety's violative conduct. As detailed herein, the additional income Plaintiff earns through Uber is a vital aspect of his finances, and its absence represents a threat to Plaintiff's livelihood, a fact which has consumed Plaintiff with frustration, anxiety, and fear. Moreover, Plaintiff continues to suffer from issues falling and/or staying asleep.

60. SambaSafety knew or should have known its conduct was directed at a senior citizen, as the report SambaSafety prepared concerning Plaintiff prominently displayed his full date of birth.

61. Moreover, Plaintiff has been forced to spend a substantial amount of time and effort disputing the inaccurate information reported by SambaSafety, which should have never been reported in the first place.

62. As of the filing of this Complaint, Plaintiff remains ineligible to accept trips on the Uber platform. Thus, the harms Plaintiff has suffered at the hands of SambaSafety are ongoing in nature.

63. Plaintiff holds lingering concerns that even if his Uber account is eventually re-activated, he will have to go through this same ordeal each time Uber updates his background check through SambaSafety.

64. Upon information and belief, SambaSafety fails to maintain and employ reasonable procedures to assure maximal accuracy of the consumer reports and consumer information it sells to third parties like Uber as required by the FCRA.

65. As a result of SambaSafety's inaccurate reporting, and subsequent failure to conduct a reasonable reinvestigation of Plaintiff's disputes, Plaintiff suffered actual damages, including but not limited to: damage to reputation, stress, anxiety, frustration, sadness, anger, sleepless nights, and a substantial amount of wasted time.

## COUNT I
### SambaSafety's Violations of 15 U.S.C. § 1681e(b)

66. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

67. The FCRA requires consumer reporting agencies, like SambaSafety, to maintain reasonable procedures to ensure they compile and disburse consumer information with maximal accuracy. 15 U.S.C. § 1681e(b).

68. SambaSafety violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation, maintenance, and dissemination of Plaintiff's consumer report(s).

69. Upon information and belief, SambaSafety has been sued or received disputes from other consumers in the past who have alleged its procedures were unreasonable and violative of the FCRA.

70. Therefore, SambaSafety had actual notice of its deficient procedures.

71. In this case, however, SambaSafety received actual notice that its procedures were unreasonable as applied to Plaintiff.

72. It is wholly unreasonable to maintain procedures that allow a driver's license status to be reported inaccurately in the face of contradictory evidence.

73. Specifically, it was wholly unreasonable for SambaSafety to report Plaintiff's driver's license was disqualified despite evidence making clear that 1) only his CDL was disqualified; and, 2) his Class C driver's license was valid.

74. As a result of SambaSafety's failure to maintain reasonable procedures to ensure maximal accuracy of Plaintiff's consumer information, Plaintiff has suffered statutory and actual damages as detailed herein.

75. SambaSafety's violations of 15 U.S.C. § 1681e(b) were willful. Therefore, SambaSafety is liable to Plaintiff for actual, statutory, and punitive damages in amounts to be determined at trial. 15 U.S.C. § 1681n.

76. Alternatively, SambaSafety's violations of 15 U.S.C. § 1681e(b) were negligent. Therefore, SambaSafety is liable to Plaintiff for statutory and actual damages in amounts to be determined at trial. 15 U.S.C. § 1681o.

77. In any event, SambaSafety is liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

### COUNT II
### SambaSafety's Violations of 15 U.S.C. § 1681i

78. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

79. Under the FCRA, when a consumer reporting agency like SambaSafety receives a dispute from a consumer that indicates an item of information in their

consumer file is inaccurate or incomplete, the consumer reporting agency is required to: conduct a reasonable investigation of the disputed information and forward the dispute to the furnisher within five days of its receipt. 15 U.S.C. § 1681i.

80. Upon information and belief, SambaSafety violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the information disputed by Plaintiff was inaccurate.

81. Upon information and belief, SambaSafety violated 15 U.S.C. § 1681i(a)(1) by failing to record the current status of the disputed information or delete the item from Plaintiff's consumer report.

82. Upon information and belief, SambaSafety violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff's consumer file upon reinvestigation of Plaintiff's disputes.

83. Upon information and belief, SambaSafety violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly correct the disputed inaccurate information in Plaintiff's consumer file upon reinvestigation of Plaintiff's disputes.

84. As a result of SambaSafety's violations of 15 U.S.C. § 1681i, Plaintiff suffered actual damages which have been further described above.

85. Upon information and belief, SambaSafety knew or should have known about its obligations under the FCRA. These obligations are well-established in the plain language of the FCRA, promulgations made by the Federal Trade Commission

(FTC) and Consumer Financial Protection Bureau (CFPB), and in well-established case law.

86. Therefore, SambaSafety acted consciously in failing to adhere to its obligations under the FCRA.

87. SambaSafety's violations of 15 U.S.C. § 1681i were willful. Therefore, SambaSafety is liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. § 1681n.

88. Alternatively, SambaSafety's violations of 15 U.S.C. § 1681i were negligent. Therefore, SambaSafety is liable to Plaintiff for statutory and actual damages in an amount to be determined at trial. 15 U.S.C. § 1681o.

89. In any event, SambaSafety is liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

## COUNT III
SambaSafety's Violations of Cal. Civ. Code § 3345

90. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

91. Cal. Civ. Code § 3345(a) provides, "this section will apply in an action brought by senior citizens to redress unfair competition or deceptive acts." Cal Civ. Code § 3345(a).

92. Cal. Civ. Code § 3345(b) allows senior citizens to recover up to three times greater than authorized by a statute, or, where a statute does not authorize a

specific amount, up to three times greater than the trier of fact would impose in the absence of that affirmative finding.

93. Upon information and belief, SambaSafety knew or should have known Plaintiff is a senior citizen. The report SambaSafety prepared concerning Plaintiff displayed his date of birth prominently.

94. SambaSafety engaged in unfair competition and deceptive acts when it furnished and reported inaccurate information concerning Plaintiff in Plaintiff's consumer report.

95. As a result of SambaSafety's conduct, misconduct, and violations of Cal. Civ. Code § 3345, SambaSafety is liable to Plaintiff for three times greater than authorized by the FCRA.

## TRIAL BY JURY

96. Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Rory Moore, respectfully requests judgment be entered against Defendant SambaSafety, for the following:

    A. Actual damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

    B. Statutory damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

    C. Punitive damages pursuant to 15 U.S.C. § 1681n;

D. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681o and/or 1681n; and

E. All pre-judgment and post-judgment interest as may be allowed under the law; and

F. Any other and further relief as the Court may deem just and proper.

Respectfully submitted this 19th day of April, 2022.

                    HAMMOUD LAW, P.C.

                    */s/ Youssef H. Hammoud*
                    Youssef H. Hammoud, CA #321934
                    E: yh@lawhammoud.com
                    *Attorney for Plaintiff*
                    *Rory Moore*